IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WILLIAM LEE BLAKE,** : | |
|     **Plaintiff,** : | |
| : | |
| v. : | **CIVIL ACTION NO. 24-CV-6249** |
| : | |
| **MR. JOSEPH MALETZ, III,** *et al.*, : | |
|     **Defendants.** : | |

**MEMORANDUM**

**SCHMEHL, J. /s/ JLS**                                                                             **JANUARY 28, 2025**

William Lee Blake, an inmate in custody at the Lehigh County Jail, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 naming Bethlehem Troop M Officers Mr. Joseph Maletz, III and Christopher Zampini, Allentown Police Department Detective Richard C. Seltzer, and Reading Assistant District Attorney Adam McNaughton.[1]  Blake also seeks leave to proceed *in forma pauperis*.  For the following reasons, the Court will grant Blake leave to proceed *in forma pauperis* and dismiss the Complaint.

**I.  FACTUAL ALLEGATIONS**[2]

---

[1] Although the Complaint refers to McNaughton as "District Attorney," McNaughton is identified as an Assistant District Attorney on the Berks County website.  *See* https://www.berkspa.gov/departments/da/about-us (last visited Jan. 15, 2025); *see also Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017) ("To the extent that we rely on information beyond what the government included in its amicus brief, that information is publicly available on government websites and therefore we take judicial notice of it.").

[2] Blake used a form complaint available to unrepresented litigants to file his claims and included the docket for his underlying state criminal case as an exhibit.  (ECF Nos. 2 & 2-1.)  The Court considers the entire submission to constitute the Complaint and adopts the sequential pagination assigned by the CM/ECF docketing system.  The factual allegations set forth in this Memorandum are taken from Complaint.  Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors will be cleaned up.  The Court may also consider

Blake alleges that his constitutional rights were violated when he was a passenger in a vehicle that was pulled over by Bethlehem Police Officers on July 11, 2023, for tinted windows. (Compl. at 4.) He contends that the officers, presumably Defendants Maletz and Zampini, did not have a warrant and "came all the way from Bethlehem to pull them over in Reading for tinted windows," but did not actually check the window tint or issue a warning or ticket for the traffic offense. (*Id*.) During the traffic stop, the officers called the Allentown Police Department's K-9 Unit[3] to the scene, but "the dog said no drugs were in the vehicle whatsoever." (*Id*.) The officers "took the vehicle" and towed it even though Blake's wife, who is the owner of the car, came to the scene and "told them they cannot take the car without a warrant." (*Id*.) The officers made Blake and the people with him walk home while the officers waited for the "overnight judge to search" the car without Blake. (*Id*.)

A review of public records reveals that, at some point thereafter, Blake was arrested and charged by the Berks County District Attorney's Office in 2023 for felony drug-related charges that occurred on July 11, 2023, for which he is currently detained in Lehigh County Jail and awaiting trial. *Commonwealth v. Blake*, CP-06-CR-0003125-2023 (C.P. Berks). Blake attached a copy of the docket sheet for this criminal proceeding to his Complaint, on which he made handwritten notes that Officer Maletz, who is listed as the arresting officer, "put drugs on us" and withheld evidence. (*Id.* at 6.) He wrote "bad warrant" on the docket sheet next to "Initial Issuing Authority: Gail M. Greth" and "HE'S WORKING WITH THEM" next to Judge Patrick

---

matters of public record when conducting a screening under § 1915. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

[3] Although Blake does not specify the K-9 Unit officer who came to the scene, the Court presumes it was Allentown Police Department Detective Richard C. Seltzer, who is the only Allentown Defendant named. (Compl. at 1.)

T. Barrett's name. (*Id*.) He also complains that there are two different affidavits "saying different things," although he does not provide any additional information about the affidavits. (*Id*. at 4.)

Blake appears to be concerned with the length of time he has been held as a pretrial detainee in connection with the 2023 criminal proceeding.[4] He claims the Defendants "lied" to "lock him up" and he feels like a "hostage," although he notes that he "finally has a court date" scheduled in November 2024.[5] (*Id*. at 3.) As a result of these events, Blake contends that he and his family have suffered damage from his sixteen months of incarceration. (*Id*. at 4.) Blake further alleges that his wife's constitutional rights were violated and the officers "stole the truck" because they took it without a warrant.[6] (*Id*.) He seeks money damages and wants the Defendants "to pay big time." (*Id*.)

---

[4] Blake adds that he has been incarcerated since July 19, 2023, based on a probation violation he "does not have from 2016." (Compl. at 4.) A review of public records indicates that Blake was arrested by the Allenton Police Department and charged by the Lehigh County District Attorney's Office in 2016 for drug-related felony charges, to which he pled guilty and was sentenced. *Commonwealth v. Blake*, CP-39-CR-0002706-2016 (C.P. Lehigh). This Court's docket reflects that Blake has filed two federal civil actions related to his 2016 state case. In September 2016, Blake filed a civil rights action in which he was ordered to file an Amended Complaint to cure defects in his case. *See Blake v. Stauffer et al.*, No. 16-4912 at ECF No. 2 (E.D. Pa. Sept. 21, 2016). Blake failed to comply, and the case has long been closed for statistical purposes. In November 2024, Blake filed a civil rights action, which is currently pending, and in which the Court will address any claims Blake currently seeks to pursue related to his 2016 criminal case. *See Blake v. Stauffer et al.*, No. 24-6067 at ECF No. 2 (E.D. Pa. Nov. 12, 2024).

[5] A review of public records reveals that a status hearing was held on November 25, 2024, and the next scheduled status hearing is February 6, 2025. *Blake*, CP-06-CR-0003125-2023.

[6] As a non-attorney proceeding *pro se*, Blake may not represent his wife or raise claims on her behalf. Under 28 U.S.C. § 1654, parties "may plead and conduct their own cases personally or by counsel" in the federal courts. Section 1654 thus ensures that a person may conduct his or her own case *pro se* or retain counsel to do so. *See Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) ("The statutory right to proceed *pro se* reflects a respect

3

## II.   STANDARD OF REVIEW

The Court grants Blake leave to proceed *in forma pauperis*.[7]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)) *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Blake is proceeding

---

for the choice of an individual citizen to plead his or her own cause." (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990))).  Although an individual may represent himself *pro se*, a non-attorney may not represent other parties in federal court.  *See Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("The rule that a non-lawyer may not represent another person in court is a venerable common law rule."), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007); *see also Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) ("[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim (quotations omitted)).  Accordingly, the Court will dismiss Blake's claims brought on behalf of his wife without prejudice to file suit if she seeks to do so.  The Court expresses no opinion on the merits of any such lawsuit.

[7]   Because Blake is a prisoner, he must still pay the $350 filing fee for this case in installments as required by the Prison Litigation Reform Act.

*pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III. DISCUSSION

The Court understands Blake's Complaint to allege claims pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "Section 1983 is not a source of substantive rights," but is merely a means "to vindicate violations of federal law committed by state actors." *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law."). Blake's claims are best construed as raising claims under the Fourth Amendment in connection with the traffic stop and related events. *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name.").

### A. Claims Related to the July 11, 2023, Traffic Stop

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." *United States v. Lewis*, 672 F.3d 232, 237 (3d Cir. 2012) (quoting *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002)). It is well-settled that the temporary detention of an individual during a traffic stop is a "seizure" of "persons" under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996).

To conduct a traffic stop, however, an officer need only have reasonable suspicion "that criminal activity is afoot." *Lewis*, 672 F.3d at 237.  Moreover, where police have directly witnessed a traffic violation, a traffic stop is a reasonable seizure under the Fourth Amendment.  *See United States v. Moorefield*, 111 F.3d 10, 12 (3d Cir. 1997) ("[A] traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations."). Further, an officer's subjective reason for making a traffic stop plays no role in the reasonable suspicion analysis.  *See Whren*, 517 U.S. at 812-13; *United States v. Yusuf*, 993 F.3d 167, 182 n.12 (3d Cir. 2021); *see also United States v. Wilson*, 960 F.3d 136, 145 (3d Cir. 2020) (a technical violation of a traffic code legitimizes a stop and pretext is "irrelevant" to the analysis), *cert. denied sub nom. Moore v. United States*, 141 S. Ct. 1090 (2021).

"A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015).  "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission' — to address the traffic violation that warranted the stop, and attend to related safety concerns." *Id.* (internal citations omitted).  "Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 355; *see also* 75 Pa. Cons. Stat. § 6308(b).  "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Rodriguez*, 575 U.S. at 355.  The length of any additional investigation and detention after a traffic stop must be supported by reasonable suspicion based on the facts and circumstances confronting the officer.  *United States v. Hurtt*, 31 F.4th 152, 159 (3d Cir. 2022).  Police are justified in ordering a driver out of the car "for their

6

own protection during the brief detention required for that investigation." *United States v. Hackett*, 173 F. App'x 164, 165 (3d Cir. 2006) (citing *Moorefield*, 111 F.3d at 13-14).

According to the Complaint, Blake was a passenger in a vehicle that was pulled over by Bethlehem Police Officers on July 11, 2023, for tinted windows without a warrant. (Compl. at 4.) When an officer observes that the tint on a vehicle's windows is so dark that it prohibits the officer from seeing inside the car, probable cause is established for a traffic stop on that basis in violation of 75 Pa. Cons. Stat. § 4524(e)(1). *Commonwealth v. Harris*, 176 A.3d 1009, 1019 (Pa. Super. Ct. 2017); *see also*, *Commonwealth v. Jackson*, 273 A.3d 1033, No. 294 MDA 2021, 2022 WL 368337, at *8 (Pa. Super. Ct. 2022) (unpublished table disposition) (upon learning that the driver he pulled over for tinted windows, a traffic code violation, lacked a valid license, "Trooper Fleisher had the additional reasonable suspicion that he needed to extend the traffic stop while he investigated whether Appellant or someone else was capable of driving the vehicle"). As noted above, a violation of traffic laws observed by an officer is a permissible reason for a traffic stop and a warrant is not required. Although Blake alleges the officers ultimately did not check the window tint or issue a warning or ticket for the traffic offense, he does not allege that the officers had no basis for perceiving a traffic violation at the time of the stop. (Compl. at 4.) Blake's failure to allege that the officers lacked reasonable suspicion to believe a violation of the Vehicle Code had occurred renders any Fourth Amendment claim based on the initial stop not plausible.

Turning to the duration of the stop, the factual allegations are sparse. The Complaint makes clear that at some point during the traffic stop for the tinted windows violation, the Allentown Police Department's K-9 Unit was called to the scene. (*Id*.) Blake claims that even though the canine did not find any drugs, officers "took the vehicle" and towed it even though

7

his wife, who is the owner of the car, "told them they cannot take the car without a warrant." (*Id*.)  The officers then made them walk home.  (*Id*.)  Blake was subsequently charged by Berks County District Attorney's Office for drug-related charges that occurred on the same date of the traffic stop.  *Blake*, CP-06-CR-0003125-2023.  Blake's claim as it relates to his Fourth Amendment rights are undeveloped.  He has not alleged facts that describe the duration of the traffic stop, clarify why the K-9 Unit was called to the scene or specify each of the Defendants actions in allegedly violating his constitutional rights during the traffic stop.  As pled, the Complaint does not allege sufficient facts to suggest plausibly that his Fourth Amendment rights were violated during the traffic stop.  *See generally Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant' s liability, it stops short of the line between possibility and plausibility of 'entitlement to relief." (internal quotations omitted)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."); *see also, Bey v. Woolridge*, No. 21-2237, 2022 WL 118133, at *5 (E.D. Pa. Jan. 12, 2022) (dismissing Bey's Fourth Amendment claims because he "makes no allegation that the police lacked reasonable suspicion to pull him over and conduct a traffic stop, and the Complaint also fails to allege any additional details regarding the circumstances leading to this stop.").  Blake will, however, be granted leave to amend on this claim.

   **B.**  **Claims Related to the 2023 Criminal Prosecution**

  The Court also understands Blake to be raising constitutional claims arising from his prosecution in Berks County and his related confinement.  As the Third Circuit has recognized, "[t]he dividing line between false arrest/imprisonment claims and malicious prosecution claims is the initiation of legal process.  Arrests made pursuant to a 'validly issued – if not validly

supported – arrest warrant' generally occur after the institution of legal process and, thus, sound in malicious prosecution rather than false arrest or imprisonment." *Noviho v. Lancaster Cnty.*, 683 F. App'x 160, 166 (3d Cir. 2017) (quoting *Myers v. Koopman*, 738 F.3d 1190, 1195 (10th Cir. 2013)); *see also Johnson v. United States*, 852 F. App'x 645, 647 (3d Cir. 2021) (*per curiam*) ("[T]he Magistrate Judge correctly concluded that because Johnson was arrested pursuant to a warrant, his claims for false arrest and false imprisonment were, in essence, malicious prosecution claims."). As mentioned above, public records reveal that Blake is detained for felony drug-related charges pending against him that occurred on July 11, 2023, the same date as the traffic stop. *Blake*, CP-06-CR-0003125-2023. According to Blake, Judge Greth[8] issued a "bad warrant" and Officer Maletz "put drugs on" him and withheld evidence.

---

[8] Although Blake does not name Judge Greth as a defendant, the Court notes that to the extent Blake intended to bring a claim against her based on the notation on the docket, it fails. Judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (*per curiam*); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (*per curiam*). An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge," which includes signing an arrest warrant. *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000); *see also, Friend v. Vann*, 614 F. App'x 593, 596 (3d Cir. 2015) (*per curiam*) ("Friend's allegations against Judge Vann stem from her signing an arrest warrant and presiding over the trial of one of Friend's acquaintances. These are official acts, which were not taken in the absence of jurisdiction, for which she is immune from suit."); *Mendoza v. Larotonda*, 270 F. App'x 157, 159 (3d Cir. 2008) (*per curiam*) ("Judge Larotonda is immune from suit for issuing the bench warrant against Mendoza because judges enjoy a comparatively sweeping form of immunity for official acts taken in their functional capacity as judges." (internal quotations omitted)).

The same immunity would apply to Judge Barrett, the presiding judge over Blake's case. Although Blake does not name Judge Barrett as a defendant, he wrote on his docket sheet that Judge Barrett is "working with them." (Compl. at 6.) Since it is apparent that any claims against Judge Barrett would be based on his handling of Blake's pending case, a case over which he clearly had jurisdiction as a judge of the Court of Common Pleas, he would be entitled to absolute judicial immunity.

(Compl. at 6.)  Thus, to the extent that Blake presents a claim based on his arrest and prosecution in the pending felony case, the Court construes this claim as a malicious prosecution claim.

To state a Fourth Amendment malicious prosecution claim, a plaintiff must plausibly allege that a government official charged him without probable cause, leading to an unreasonable seizure of his person.  *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 557 (2024) (citing *Thompson v. Clark*, 596 U.S. 36, 43, and n.2 (2022)).  A malicious prosecution claim under § 1983 has five elements: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007).  That a "valid" crime was also charged along with the charge that ended in the plaintiff's favor does not create a categorical bar to a claim.  *Chiaverini*, 602 U.S. at 562 ("The question here is whether a Fourth Amendment malicious-prosecution claim may succeed when a baseless charge is accompanied by a valid charge. . . . Consistent with both the Fourth Amendment and traditional common-law practice, courts should evaluate suits like Chiaverini's *charge by charge*." (emphasis added)).  A "favorable termination" occurs when a prosecution ends "without a conviction."  *Thompson*, 596 U.S. at 49 ("In sum, we hold that a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence.  A plaintiff need only show that the criminal prosecution ended without a conviction.").

Blake's malicious prosecution claim is not cognizable in a civil rights action at this time because he has not alleged that the criminal proceedings have terminated in his favor.  Indeed, it

appears from the public docket and the Complaint that the 2023 proceeding has not terminated at all. A malicious prosecution claim is not cognizable until favorable termination is achieved, because that is when the "favorable termination" element of the cause of action is complete. *See Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) ("Accrual is the occurrence of damages caused by a wrongful act — when a plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." (internal quotations omitted)); *Rose v. Bartle*, 871 F.2d 331, 349 (3d Cir. 1989) (agreeing that "because favorable termination was a necessary element of their section 1983 claim, [plaintiffs] neither knew nor had reason to know of the injury that constituted the basis of their actions until such termination, and that, accordingly, their section 1983 actions did not accrue under federal law until such termination"). The Court will therefore dismiss Blake's malicious prosecution claim because it has not yet accrued. *See Hoyle v. Crozier*, No. 22-3049, 2022 WL 7127649, at *4 (E.D. Pa. Oct. 12, 2022) ("[T]he Court will dismiss any malicious prosecution claims because, at this time, the charges in question have not terminated in Hoyle's favor.").

Blake's malicious prosecution claim also fails because it appears to be brought against McNaughton based on his role as a Berks County Assistant District Attorney, acting on behalf of the Office that brought the relevant criminal charges against Blake leading to his arrest and incarceration in July 2023.[9] The claims against McNaughton must be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a plausible claim because prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a

---

[9] To the extent Blake raises claims against any other Defendants related to his 2023 prosecution, he has not clearly pled a basis for their liability. Conclusory sentence fragments on an exhibit are insufficient to state a claim.

11

prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). Absolute immunity extends to the decision to initiate a prosecution, *id.* at 431, includes even "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992), as well as presenting a state's case at trial, *Imbler*, 424 U.S. at 431, and appearing before a judge to present evidence. *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020).

Because Blake's claims against McNaughton are based upon his action as a prosecutor for bringing criminal charges against him on behalf of the Commonwealth and, perhaps, for how he has been handling the prosecution, McNaughton is entitled to absolute immunity and the claims against him will be dismissed with prejudice. Leave to amend will not be granted as to this claim because it would be futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-113 (3d Cir. 2002).

## IV.  CONCLUSION

For the reasons stated, the Court will grant Blake leave to proceed *in forma pauperis* and dismiss his Complaint. All claims against Reading Assistant District Attorney Adam McNaughton will be dismissed with prejudice. Blake's claims brought on behalf of his wife will be dismissed without prejudice to her filing her own suit. Blake's remaining claims will be dismissed without prejudice, and he will be provided an opportunity to file an Amended Complaint if he is capable of curing the defects the Court has identified in these claims. An appropriate Order follows, which provides guidance as to amendment.